UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HONG LEONG FINANCE LIMITED                    :
(SINGAPORE),
                                              :
                                                        OPINION AND ORDER
                        Plaintiff,            :
                                                        12 Civ. 6010 (JMF) (GWG)
              -v.-                            :

                                              :
  PINNACLE PEFORMANCE LIMITED et al.,
                                              :
                        Defendants.
------------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

          In this action, Hong Leong Finance Limited (Singapore) ("HLF") asserts claims against

Morgan Stanley and some of its affiliates (collectively "defendants").  Defendants have moved

for a protective order staying discovery pending the resolution of their motion to dismiss the

Amended Complaint.  For the reasons set forth below, defendants' motion for a stay is granted.

I.        BACKGROUND

           HLF brings a claim under the Lanham Act, 15 U.S.C. §§ 1051 et. seq., and claims under

various state law theories, including fraud, fraudulent inducement, negligent misrepresentation,

and breach of contract.  See Amended Complaint, filed Mar. 13, 2013 (Docket # 21) ("Am.

Compl."), ¶¶ 229–98.  All the claims relate to notes issued by defendant Pinnacle Performance

Limited ("Pinnacle") and sold to investors by HLF (the "Notes").  See id.

          In 2006, HLF entered into an agreement with defendants to sell structured notes to

customers.  See Master Distributor Appointment Agreement, dated Oct. 6, 2006 (annexed as Ex.

5 to Declaration of Jonathan K. Youngwood, filed Apr. 12, 2013 (Docket # 46) ("Youngwood

Decl.")).  The Notes were a type of derivative that shifted the risk that a particular group of

reference entities would not meet their obligations in exchange for periodic payments.  See Base Prospectus, dated Aug. 7, 2006 (annexed as Ex. 1 to Youngwood Decl.) ("Prospectus"), at A-1–A-2 (describing First-to-Default Credit Linked Notes).  The Notes at issue were created as follows.  First, Pinnacle, a Special Purpose Vehicle ("SPV"), entered into a "Swap Agreement," also known as a credit default swap ("CDS"), with Morgan Stanley Capital Services Inc. ("MS Capital").  See id. at 1–2, 18–19.[1]  Pinnacle agreed to insure MS Capital against the risk that several sovereign nations and foreign corporations would default on their obligations.  See Pricing Statement, dated Aug. 7, 2006 (annexed as Ex. 2 to Youngwood Decl.), at 8.  Second, to fund its obligations under the CDS, Pinnacle issued the Notes, which were sold to investors.  See generally Prospectus at A-2–A-5, A-10.  Third, Pinnacle invested the principal raised by the sale of the Notes into "underlying assets."  See id. at 8–9, 11–13, A-15–A-17.

According to the Amended Complaint, the "underlying assets" were to consist of "safe and liquid" investments.  Am. Compl. ¶ 141.  HLF alleges that Pinnacle instead invested the principal in risky synthetic Collateralized Debt Obligations ("CDOs").  Id. ¶¶ 19, 21, 99–100.[2]  These CDOs protected MS Capital from the high risk that a number of volatile reference entities would default on their obligations.  Id. ¶¶ 21(c)–(d), 147–48, 153–55.  When promoting the Notes, defendants purportedly did not disclose the riskiness of the underlying assets to either the distributors or the customers that purchased the Notes.  Id. ¶¶ 21(d), 22–23.  HLF alleges that the CDOs were designed to fail and to transfer the investors' principal to the defendants.

---

[1]  A CDS is a structured instrument in which a party, here Pinnacle, agrees — in exchange for periodic payments — to protect a counter-party, in this case MS Capital, from the risk that a group of reference entities will not meet their obligations.  See Am. Compl. ¶ 14(a).

[2]  A synthetic CDO is essentially "a group of credit default swaps bundled together."  Id. ¶ 21(b).

Id. ¶¶ 21(c), 24.  HLF alleges it sold $72.4 million worth of the Notes to its customers.  Id. ¶ 117. After the Notes failed, the Monetary Authority of Singapore found that HLF violated Singapore law in connection with the sale of the Notes, see Investigation Report on the Sale and Marketing of Structured Notes Linked to Lehman Brothers, dated July 7, 2009 (annexed as Ex. 3 to Youngwood Decl.), at 47–55, and HLF was required to compensate customers for financial losses in the amount of approximately $32 million, Am. Compl. ¶ 228.

On April 26, 2010, HLF petitioned in Singapore for pre-action discovery from Morgan Stanley Asia (Singapore) Pte ("MS Singapore").  See Affidavit of Christopher David Jackson, dated Aug. 21, 2012 (annexed as Ex. 4 to Youngwood Decl.) ("Jackson Decl."), ¶¶ 36–45.  A Singapore court eventually ordered MS Singapore to produce a limited set of documents.  Id. ¶¶ 42, 45.

On October 25, 2010, customers that bought Pinnacle Notes commenced a class action in this Court against defendants, alleging among other things, fraud, negligent misrepresentation, and breach of fiduciary duty.  See Complaint, Dandong v. Pinnacle Performance Ltd., 10 Civ. 8086 (S.D.N.Y. Oct. 25, 2010) (Docket # 1) ("Dandong"), ¶¶ 1, 291–374.

On August 6, 2012, HLF filed this action.  In response, defendants applied for an anti-suit injunction in the High Court of the Republic of Singapore ("High Court") on August 22, 2012.  See Declaration of Jason L. Lichtman in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Stay Discovery, filed Apr. 19, 2013 (Docket # 50) ("Lichtman Decl."), ¶ 4.  The High Court issued an ex parte interim anti-suit injunction barring HLF from "maintaining and/or continuing the prosecution of" this case or "[c]ommencing any proceedings or taking any steps against" defendants "in relation to any claims concerning and/or arising out of" the Notes.  See Order of Court, Morgan Stanley Asia (Singapore) Pte v. Hong

3

Leong Finance Ltd., Originating Summons No. 798/2012/E, dated Aug. 22, 2012 (annexed as Ex. 1 to Lichtman Decl.). On August 29, 2012, defendants obtained a second interim injunction prohibiting HLF from communicating with this Court. See Order of Court, Morgan Stanley Asia (Singapore) Pte v. Hong Leong Finance Ltd., Originating Summons No. 798/2012/E, dated Aug. 29, 2012 (annexed as part of Ex. 5 to Lichtman Decl.). The High Court issued a third interim injunction on August 31, 2012, that continued the terms of the second injunction. See Order of Court, Morgan Stanley Asia (Singapore) Pte v. Hong Leong Finance Ltd., Originating Summons No. 798/2012/E, dated Aug. 31, 2012 (annexed as part of Ex. 6 to Lichtman Decl.). On March 13, 2013, however, the High Court denied defendants' request for a permanent injunction and dissolved the existing interim injunctions. Lichtman Decl. ¶¶ 10–12.

On April 5, 2013, defendants indicated at a Rule 16 conference that they intended to file a motion to dismiss and sought a stay of discovery. See Transcript, filed Apr. 26, 2013 (Docket # 52), 7:19–8:13. Their motion for a protective order staying discovery was filed on April 12, 2013.[3] On April 26, 2013, defendants filed a motion to dismiss the Amended Complaint. See Notice of Defendants' Motion to Dismiss the Amended Complaint, filed Apr. 26, 2013 (Docket

---

[3] See Notice of Defendants' Motion to Stay Discovery, filed Apr. 12, 2013 (Docket # 44); Defendants' Memorandum of Law in Support of Motion to Stay Discovery, filed Apr. 12, 2013 (Docket # 45) ("Def. Mem."); Youngwood Decl.; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Stay Discovery, filed Apr. 19, 2013 (Docket # 49) ("Pl. Opp."); Lichtman Decl.; Defendants' Reply Memorandum of Law in Further Support of Motion to Stay Discovery, filed Apr. 26, 2013 (Docket # 54) ("Reply").

By letter dated April 30, 2013, HLF requested permission to file a sur-reply on the ground that defendants raised new arguments in their reply brief. See Letter from David S. Stellings, Lieff Cabraser Heimann & Bernstein, LLP, to Honorable Gabriel W. Gorenstein, filed May 21, 2013 (Docket # 51). We note that we have declined the suggestion made in defendants' reply brief that the Court examine the defendants' papers in support of their motion to dismiss. See Reply at 2 n.1. Because the Court is unable to discern any new arguments made in the remainder of the reply brief, HLF's request is denied.

# 55).  Briefing on that motion has not yet completed.

II.    LAW GOVERNING A MOTION TO STAY DISCOVERY

A motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act.  See Brooks v. Macy's, Inc., 2010 WL 5297756, at *1 (S.D.N.Y. Dec. 21, 2010) (citing cases), reh'g denied, 2011 WL 1362191 (S.D.N.Y. Apr. 8, 2011).  Thus, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."  Moran v. Flaherty, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992).  However, "upon a showing of good cause a district court has considerable discretion to stay discovery" pursuant to Fed. R. Civ. P. 26(c).  Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc., 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009); accord Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc., 2009 WL 274483, at *1 (S.D.N.Y. Feb. 3, 2009).

In some circumstances, a pending motion to dismiss may constitute "good cause" for a protective order staying discovery.  See Brooks, 2010 WL 5297756, at *1; Picture Patents, LLC v. Terra Holdings LLC, 2008 WL 5099947, at *2 (S.D.N.Y. Dec. 3, 2008).  "[A] court determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case."  Alford v. City of N.Y., 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012) (citation omitted).  Courts consider: "(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion."  Brooks, 2010 WL 5297756, at *2 (citation and internal quotation marks omitted); accord Integrated Sys. & Power, Inc., 2009 WL 2777076, at *1.

In their examination of the "strength of the motion," district courts in this Circuit have often stated that a stay of discovery is appropriate where a motion "do[es] not appear to be without foundation in law."  ITT Corp. v. Travelers Cas. & Sur. Co., 2012 WL 2944357, at *2

(D. Conn. July 18, 2012) (alteration in original) (quoting Johnson v. N.Y. Univ. Sch. of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002)); accord Steuben Foods, Inc. v. Country Gourmet Foods, LLC, 2009 WL 3191464, at *3 (W.D.N.Y. Sept. 30, 2009) (same); Integrated Sys. & Power, Inc., 2009 WL 2777076, at *1 (defendant's motion "appears not to be unfounded in the law") (citation and internal quotation marks omitted); Niv v. Hilton Hotels Corp., 2007 WL 510113, at *1 (S.D.N.Y. Feb. 15, 2007) (same). This formulation, however, would seem to encompass a motion with little chance of succeeding — arguably equivalent to the "nonfrivolous" benchmark that prevents the triggering of a sanction under Fed. R. Civ. P. 11(b)(2). The "not without foundation in law" standard appears to derive from a remark made in the case of Chrysler Capital Corp. v. Century Power Corp., 137 F.R.D. 209 (S.D.N.Y. 1991), in which the court, in considering a motion for a stay of discovery, commented that pending motions to dismiss did "not appear to be without foundation in law." Id. at 210. Chrysler Capital Corp., however, did not apply that standard. Rather, in granting the motion for a stay, the court noted that the motion to dismiss appeared "to have substantial grounds." Id. at 211. Thus, we read Chrysler Capital Corp. as requiring that a pending motion to dismiss have "substantial grounds" in order to stay discovery and decline to use the "not without foundation in law" standard. As one court has noted, "[a]n overly lenient standard for granting motions to stay all discovery is likely to result in unnecessary discovery delay in many cases." Clemons v. Hayes, 2011 WL 2112006, at *3 (D. Nev. May 26, 2011).

Instead, we follow the courts that have required a motion for a stay be supported by "substantial arguments for dismissal," Spencer Trask Software and Info. Servs., LLC v. RPost Intern. Ltd., 206 F.R.D. 367, 368 (S.D.N.Y. 2002); see also Chrysler Capital Corp, 137 F.R.D. at 211, or — in what we view as an equivalent formulation — that there has been "a strong

6

showing that the plaintiff's claim is unmeritorious." Telesca v. Long Island Hous. P'ship, Inc.,

2006 WL 1120636, at *1 (E.D.N.Y. Apr. 27, 2006) (citation omitted); accord Giminez v. Law

Offices of Hoffman & Hoffman, 2012 WL 2861014, at *2 (E.D.N.Y. July 11, 2012); Flores v. S.

Peru Copper Corp., 203 F.R.D. 92, 94 (S.D.N.Y. 2001). This latter standard is in accord with the

standard used in requests for stays in other contexts, such as a stay of a court ruling pending the

outcome of an appeal, which requires a "strong showing that [the party moving for the stay] is

likely to succeed on the merits." U.S. S.E.C. v. Citigroup Global Mkts. Inc., 673 F.3d 158,

162–63 (2d Cir. 2012) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)) (internal

quotation marks omitted).

III.    DISCUSSION

    A.    Strength of Motion to Dismiss

    We now turn to the question of whether defendants here have made "substantial

arguments" for dismissal or a "strong showing" that they will prevail on their motion.

Defendants argue that the case must be dismissed because the Court lacks subject matter

jurisdiction over it. See Def. Mem. at 7–11.

    1.    Diversity Jurisdiction

    In its Amended Complaint, HLF asserts that the Court has diversity jurisdiction over this

matter. See Am. Compl. ¶ 87. A "party seeking to invoke jurisdiction under 28 U.S.C. § 1332

bears the burden of demonstrating that the grounds for diversity exist and that diversity is

complete." Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322–23 (2d Cir. 2001) (citation

and internal quotations omitted). While 28 U.S.C. § 1332(a)(2) permits diversity jurisdiction in

cases between "citizens of a State and citizens or subjects of a foreign state," the Second Circuit

has held that diversity is absent where there are foreign parties on both sides of the case.

7

See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d

Cir. 2012) (diversity jurisdiction lacking "'where the only parties are foreign entities, or where

on one side there are citizens and aliens and on the opposite side there are only aliens'") (quoting

Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002));

Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC, 232 F.3d 79, 82 (2d Cir. 2000) (per

curiam) ("Diversity jurisdiction is lacking . . . because corporations incorporated outside the

United States are present on both sides of the dispute."); Mentor Ins. Co. v. Brannkasse, 996

F.2d 506, 512 (2d Cir. 1993) ("[T]he alignment of alien corporations as both plaintiffs and

defendants defeats the allegation of diversity jurisdiction[.]").

  Here, it is undisputed that HLF is a citizen of Singapore, see Am. Compl. ¶ 25, and that

three of the six defendants are foreign entities, see id. ¶ 34 (Pinnacle "is a limited liability

corporation duly organized and existing under the laws of the Cayman Islands"); id. ¶ 37 (MS

Singapore is incorporated in Singapore and has a principal place of business in Singapore); id.

¶ 39 ("Morgan Stanley & Co. International plc . . . is a corporation duly organized and existing

under the laws of England and Wales . . . ."). HLF argues that these foreign entities are "alter

egos" of Morgan Stanley and therefore have no citizenship apart from that of Morgan Stanley, a

domestic corporation. Id. ¶¶ 31, 87; Pl. Opp. at 18. But District Courts in this Circuit have held

that "'an alter ego analysis for purposes of diversity jurisdiction is limited to situations in which

it will add an additional state of citizenship in order to destroy diversity.'" Unclaimed Prop.

Recovery Serv., Inc. v. Credit Suisse AG, 2013 WL 1777761, at *2 (S.D.N.Y. Apr. 25, 2013)

(emphasis added) (quoting Zadora–Gerlof v. Axa Nordstern Art Ins. Corp., 2002 WL 31324138,

at *1 (S.D.N.Y. Oct. 17, 2002)); accord Grunblatt v. UnumProvident Corp., 270 F. Supp. 2d 347,

352 (E.D.N.Y. 2003). This principle derives from the refusal of courts to permit "a non-diverse

corporation to assume the citizenship of its out-of-state alter ego." Grunblatt, 270 F. Supp. 2d at 352.  Instead, "[t]wo corporations that are deemed to be alter egos of each other acquire the citizenship of each other."  Id.; accord Unclaimed Prop. Recovery Serv., Inc., 2013 WL 1777761, at *2.  Thus, there is no logical argument — let alone case law — supporting the notion that a corporation's own citizenship status would be nullified simply because it had an alter ego whose citizenship, if assigned to the corporation, would maintain complete diversity.

Therefore, defendants' argument that the Court lacks diversity jurisdiction appears to be a substantial one that has a strong likelihood of success.

### 2. Federal Question Jurisdiction

Alternatively, HLF pleads that the Court may exercise federal question jurisdiction over its Lanham Act claim and supplemental jurisdiction over the remaining claims.  Am. Compl. ¶ 88.  While not clearly articulated in the complaint, HLF's Lanham Act claim appears to constitute a false advertising claim under § 43(a) of the Lanham Act ("§ 43"), 15 U.S.C. § 1125(a)(1)(B), which applies to "goods, services, or commercial activities" but not specifically to securities.  Defendants argue that there is no Lanham Act claim because securities are not "goods" under the Lanham Act.  See Def. Mem. at 10–11.

The Lanham Act does not define the term "goods."  See Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc., 778 F. Supp. 2d 726, 738 (N.D. Tex. 2011).  The only cases that have considered this issue have found that securities are not "goods" within the meaning of the Lanham Act.  See id. (adopting UCC definition of "goods" for Lanham Act); The Side Fund, Inc. v. New England Life Side Fund, Inc., 1970 WL 203, at *2 (S.D.N.Y. Nov. 2, 1970) ("shares of stock" are neither goods nor services under § 43).  Moreover, in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 31 (2003), the Supreme Court defined the term "goods"

by its dictionary definition of "'[w]ares; merchandise'" in interpreting the meaning of the "origin of goods" under § 43(a).  Id. (alteration in original) (quoting Webster's New International Dictionary 1079 (2d ed. 1949)).

HLF argues that at the time the Lanham Act was enacted, the Second Circuit, in Bozant v. Bank of New York, 156 F.2d 787 (2d Cir. 1946), defined "goods" to include "bonds, shares of stock, commercial paper, bills of lading and the like . . . ."  Pl. Opp. at 16–17 (quoting Bozant, 156 F.2d at 790).  But Bozant was considering the meaning of "goods" under the Fair Labor Standard Act ("FLSA"), see Bozant, 156 F.2d at 788–90 (defining "goods" as under 29 U.S.C. § 203(i)), and, in concluding that the defendant engaged in the "production of goods for commerce" within the meaning of the FLSA, it found that the defendant actually manufactured "documents" that embodied financial instruments, id. at 790.  Accordingly, we do not view Bozant as controlling.  The other cases cited by HLF in support of its argument that securities are "goods" within the meaning of § 43 are also distinguishable.  See Finnegan v. Campeau Corp., 915 F.2d 824, 827 (2d Cir. 1990) (referring with approval to Bozant's definition of goods in dictum but only in reference to the Sherman Act, which it viewed as not limited to "'goods' qua 'item of goods'"), cert. denied, 499 U.S. 976 (1991); Midwest Packaging Materials Co. v. Midwest Packaging Corp., 312 F. Supp. 134, 136 (S.D. Iowa 1970) (stock certificates may be considered "goods" within meaning of act, but not speculating on whether securities are goods).  Indeed, as noted by a case cited by plaintiff, the Second Circuit has opined that "'goods' is a term of variable content."  Finnegan, 915 F.2d at 827 (citation and internal punctuation omitted).  Thus, there is no reason to import the definition of the term from one statute to another.  Given that the Supreme Court has previously defined "goods" under § 43 as "'[w]ares, merchandise'" and that other courts have refused to recognize securities as goods under Lanham Act,

defendants' argument that HLF's Lanham Act claim fails to state a cause of action — and thus that this Court lacks jurisdiction over any of the claims in this matter — is a substantial one.

In sum, the strength of defendants' motion to dismiss tips strongly in favor of granting a protective order staying discovery.

B.      Burden on Defendants and Prejudice

HLF claims that defendants will not suffer an undue burden if the Court refuses to stay discovery because it is prepared to request access only to the documents that were already produced by the defendants in the Dandong case.  See Pl. Opp. at 10–13.  Under HLF's proposal, it would not request any other discovery pending the outcome of the motion to dismiss, id. at 10, and "HLF would substantially complete production of documents in response to Defendants' document requests by June 7, 2013," Lichtman Decl. ¶ 13.  It makes this proposal in an effort to put this case on the same discovery track as the Dandong case.  Pl. Opp. at 13–16.

It would indeed be preferable to have the two cases on the same discovery track — though the Court sees the prejudice to a two-track process to fall largely on the defendants, who may have to submit to two rounds of depositions if the depositions in the two cases cannot be coordinated.  Inasmuch as defendants are apparently content to bear the risk of this prejudice, it does not factor into the Court's analysis.

The Court recognizes that there may be some prejudice to HLF in being unable to coordinate discovery with the plaintiffs in Dandong.  But the Court is doubtful that the discovery in the two cases can be coordinated as a practical matter anyway given that this case is still in the early stages of the litigation.  And the Court lays a good portion of the responsibility for this situation at the doorstep of plaintiff, who waited more than two years after requesting pre-action discovery from defendants in Singapore, see Jackson Decl. ¶¶ 36–45, — and almost two years

11

after the Dandong suit was filed — before bringing their own action.  Moreover, if only HLF is

to receive document discovery, it will do little to put the two cases on the same track if

defendants are not also required to conduct document discovery of HLF.  See generally In re

AOL Time Warner, Inc. Sec. Litig., 2006 WL 1997704, at *3 (S.D.N.Y. July 13, 2006)

(plaintiffs' access to discovery documents while defendant "must wait on the resolution of any

motions to dismiss" creates "substantial" advantage for plaintiffs and "undue prejudice" on

defendant, as plaintiffs "are able to formulate their litigation and settlement strategy").  But if we

require defendants to engage in their own document discovery of plaintiffs, with the attendant

need to review that discovery and make appropriate applications to compel, this would create a

significant burden on defendants in the face of a seemingly strong motion to dismiss.

IV.    CONCLUSION

In balancing the various factors, we have been mindful of the Court's obligation not to

proceed unnecessarily with merits discovery in a case over which the Court may lack subject

matter jurisdiction.  See generally Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir.

1990) ("[G]enerally a plaintiff may be allowed limited discovery with respect to the

jurisdictional issue; but until [it] has shown a reasonable basis for assuming jurisdiction, [it] is

not entitled to any other discovery.") (citation omitted).  We conclude that discovery should be

stayed pending disposition of the motion to dismiss.

Accordingly, defendants' motion for a stay of discovery (Docket # 44) is granted.

12

SO ORDERED.

Dated: May 22, 2013
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge