```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

HONG LEONG FINANCE LIMITED (SINGAPORE),

                        Plaintiff,

           -v-

PINNACLE PERFORMANCE LIMITED, et al.,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/23/2013

12 Civ. 6010 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

      In this action, a Singaporean financial institution, Hong Leong Finance Limited ("HLF") asserts various claims against Morgan Stanley and certain of its affiliates (collectively, "Morgan Stanley"), related to a group of credit-linked notes (the "Pinnacle Notes" or the "Notes") created and issued by Morgan Stanley. Morgan Stanley entered into a distribution agreement with HLF, under which HLF sold the Notes to Singaporean investors. HLF brings claims against Morgan Stanley under the Lanham Act (15 U.S.C. §§ 1051 *et seq.*), and it also brings common law claims for, *inter alia*, fraud and fraudulent inducement (Am. Compl. (Docket No. 21)). Morgan Stanley moves to dismiss the Amended Complaint pursuant to, *inter alia*, Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is GRANTED and the Amended Complaint is dismissed.

## BACKGROUND

      The following facts are taken from the Amended Complaint and documents referenced therein. The allegations in the Amended Complaint are assumed to be true for purposes of this motion. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).

This action stems from eight series of Pinnacle Notes that Morgan Stanley issued between August 2006 and December 2007. (Am. Compl. ¶ 116). The Notes are a type of credit derivative known as a credit-linked note (a "CLN"), which functions by shifting the credit risk associated with certain Reference Entities ("REs") from a "protection buyer" (typically the bank arranging the CLNs) to a "protection seller" (the CLN investors). As the Honorable Leonard B. Sand — to whom this case was previously assigned — explained in a related case, CLNs are created as follows:

> *First*, the bank arranging the CLNs creates a Special Purpose Vehicle ("SPV") to issue the CLNs. The SPV is generally . . . an orphan company owned by a trustee that will not appear on the balance sheet of any party to the transaction. The bank then buys protection from the SPV in the amount of the CLNs that will be issued to investors insuring it against the possibility that the REs would experience a credit event, such as a default. The name given to this particular transaction is a credit default swap, and this is, in effect, a derivative contract that functions like a form of insurance. *Second*, the SPV sells the CLNs to investors and uses the principal it receives therefrom to purchase highly-rated securities, or underlying assets, which serve as collateral in the event the REs default. . . . *Third*, in return for assuming the risk, investors receive interest in the form of (i) credit protection payments from the sponsoring bank and (ii) any interest generated by the underlying assets. Assuming that no credit event occurs, investors will receive the redemption value of the Note.

*Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (LBS), 2011 WL 5170293, at *1 (internal quotation marks and citations omitted).

Although the underlying assets in CLNs are typically composed of "safe and liquid income-generating asset[s]" (Am. Compl. ¶ 94(c)), HLF alleges that Morgan Stanley selected "very risky" assets to serve this function. (*Id.* ¶ 19). Specifically, HLF contends that Morgan Stanley selected single-tranche synthetic CDOs to serve as the underlying assets. (*Id.* ¶¶ 95-99, 147). Not only were these assets risky, alleges HLF, but Morgan Stanley actually designed them to fail because it, through its affiliate MS Capital, had taken a "short" position on these very

same assets — that is, it had bet against them. (*Id.* ¶¶ 21, 147). Each series of Notes was created, issued, and sold pursuant to a set of offering documents, and HLF contends that these documents were false and misleading. (Am. Compl. ¶¶ 113, 195-218).

Morgan Stanley did not, however, sell the Notes directly to the Singaporean investors. Instead, it entered into a distribution agreement with HLF that required HLF to "use its reasonable efforts to procure subscribers in Singapore" for the Notes (Am. Compl., Ex. 3 ¶ 3.1), and collect the investors' payments (*id.* ¶¶ 3.4). The distribution agreement also contained an indemnification provision that obligated Morgan Stanley to indemnify HLF for certain losses related to the Notes. (Am. Compl. ¶ 134; Am. Compl., Ex. 3 ¶ 14.1). HLF contends that Morgan Stanley persuaded HLF to sell the Notes to its customers by emphasizing that they were "conservative" and "low-risk products" (*id.* ¶¶ 123, 127) suitable for HLF's customers: middle-class and working-class Singaporeans, and small- and medium-sized enterprises (*id.* ¶¶ 6, 124). HLF eventually sold its customers $72.4 million worth of Pinnacle Notes. (Am. Compl. ¶ 8).

Ultimately, the Pinnacle Notes failed, and the Monetary Authority of Singapore ("MAS"), Singapore's de facto central bank, intervened. The MAS instructed purchasers of the Notes to file claims relating to the Notes' failure directly with HLF. (Am. Compl. ¶ 224). The MAS also appointed an "independent person" to oversee HLF's complaints resolution process, and mandated HLF to make payments to the investors, which totaled over $32 million as of the date of the Amended Complaint. (Am. Compl. ¶¶ 6, 9, 220-228).

On August 1, 2012, HLF brought the instant suit against Morgan Stanley (Complaint (Docket No. 1)).[1] In its original Complaint, HLF premised subject-matter jurisdiction solely on

---

[1] The investors brought suit against Morgan Stanley and its affiliates in a separate action, captioned *Ge Dandong v. Pinnacle Performance Limited*. *See generally Ge Dandong v.*

diversity grounds. By letter dated November 12, 2012, Defendants asserted that the diversity statute did not provide a basis for jurisdiction in this case. (Docket No. 16). On March 13, 2013, HLF therefore amended the complaint to assert claims under the Lanham Act, 15 U.S.C. §§ 1501 *et seq.*, and jurisdiction under the federal question statute. (Am. Compl. ¶¶ 88, 229-243). HLF also brings common law claims for fraud, fraudulent inducement to contract, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and equitable subrogation. (Am. Compl. ¶¶ 244-98). As noted, Morgan Stanley moves to dismiss the Amended Complaint on the grounds of, *inter alia*, lack of subject matter jurisdiction and failure to state a claim.

## SUBJECT-MATTER JURISDICTION

Morgan Stanley's motion to dismiss for lack of subject-matter jurisdiction is easily rejected. To be sure, the Amended Complaint alleges subject-matter jurisdiction on the grounds of diversity (Am. Compl. ¶ 87), and HLF concedes that there is no diversity where, as here, a suit is between the citizen of a foreign state (HLF), on the one hand, and citizens of states (Morgan Stanley (*id.* ¶ 31), Morgan Stanley Capital Services LLC (*id.* ¶ 45), and Morgan Stanley & Co. LLC (*id.* ¶ 50)) *and* citizens of foreign states (Pinnacle Performance Limited (Am. Compl. ¶ 34), Morgan Stanley Asia (Singapore) Pte (Am. Compl. ¶ 37), and Morgan Stanley & Co. International plc (Am. Compl. ¶ 39)), on the other. (Pl.'s Mem. 7 n.2 (Docket No. 66)). *See,*

---

*Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (LBS), 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011); *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (LBS), 2011 WL 6156743 (S.D.N.Y. Dec. 12, 2011), *aff'd sub nom. Lam Yeen Leng v. Pinnacle Performance Ltd.*, 474 F. App'x 810, 814 (2d Cir. 2012) (summary order); *Ge Dandong v. Pinnacle Performance Ltd.*, — F. Supp. 2d. —, 2013 WL 4482509, at *13 (S.D.N.Y. Aug. 22, 2013); *Ge Dandong v. Pinnacle Performance Limited*, No. 10 Civ. 8086 (JMF) (S.D.N.Y. Oct. 17, 2013).

*e.g.*, *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) (per curiam). In its Amended Complaint, however, HLF alleges a federal claim under the Lanham Act. Although "[s]imply raising a federal issue in a complaint will not automatically confer federal question jurisdiction," *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002), and there is some reason to believe that HLF added its Lanham Act claim here only after it realized that there was no diversity jurisdiction, "[t]he inadequacy of a federal claim is ground for dismissal for lack of subject-matter jurisdiction only when the claim is so insubstantial, implausible, foreclosed by prior decisions of the Supreme Court, or otherwise completely devoid of merit as not to involve a federal controversy," *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 133 (2d Cir. 2010) (alterations, emphasis, and internal quotation marks omitted). The Court is not prepared to say that is the case here. Accordingly, the Court has subject-matter jurisdiction pursuant to Title 28, United States Code, Section 1331.[2]

## THE LANHAM ACT CLAIM

The Court turns, then, to whether the Amended Complaint states a valid Lanham Act Claim. In reviewing a Rule 12(b)(6) motion, a court must accept the factual allegations set forth

---

[2] While subject-matter jurisdiction is a threshold issue that must be addressed prior to the merits, *see, e.g.*, *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated on other grounds*, 585 F.3d 559 (2d Cir. 2009), the Court need not address Defendants' arguments about the lack of personal jurisdiction over Pinnacle Performance Limited, *see, e.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) ("Although we traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues. In cases involving multiple defendants — over some of whom the court indisputably has personal jurisdiction — in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [a court may] proceed[ ] directly to the merits on a motion to dismiss . . . ." (citations and internal quotation marks omitted)). In any event, the Court has previously rejected Defendants' arguments. *See Ge Dandong v. Pinnacle Performance Ltd.*, — F. Supp. 2d —, 2013 WL 4482509, at *4-8 (S.D.N.Y. 2013).

in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Applying those standards here, HLF's Lanham Act claim must be dismissed because the Amended Complaint fails to allege facts that would support application of the statute extraterritorially to the conduct at issue in this case. It is well established that "[t]he Lanham Act may reach allegedly infringing conduct that occurs outside the United States when necessary to prevent harm to commerce in the United States." *Atl. Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189, 192 (2d Cir. 1998).[3] More specifically, the Second Circuit has long held

> that three factors — the so-called "*Vanity Fair* factors" — are relevant to whether the Lanham Act is to be applied extraterritorially: (i) whether the defendant is a United States citizen; (ii) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under

---

[3] Although Defendants suggest that this may no longer be good law after *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), and *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013) (Defs.' Mem. 13-14), that suggestion is without merit. Among other things, the *Morrison* Court expressly reaffirmed that the Lanham Act reaches conduct beyond the United States. *See* 130 S. Ct. at 2886 n.11; *see also MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615 (CM), 2013 WL 4105698, at *11 (S.D.N.Y. Aug. 12, 2013).

>domestic law; and (iii) whether the defendant's conduct has a substantial effect on United States commerce.

*Id.* Although the first two factors are significant, *see Vanity Fair Mills*, 234 F.2d 633, 643 (2d Cir. 1956) (stating that "the absence of one of the [first two] factors might well be determinative and that the absence of both is certainly fatal"), the third is critical and often dispositive, *see, e.g.*, *Procter & Gamble Co. v. Colgate-Palmolive Co.*, No. 96 Civ. 9123 (RPP), 1998 WL 788802, at *66 (S.D.N.Y. Nov. 9, 1998) (describing the third factor as a "a necessary predicate"), *aff'd*, 199 F.3d 74 (2d Cir. 1999). In fact, the Court of Appeals has "never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce." *Atl. Richfield Co.*, 150 F.3d at 192 n.4; *accord Gucci America, Inc. v. Guess, Inc.*, 790 F. Supp. 2d 136, 142-143 (S.D.N.Y. 2011).

In this case, Plaintiff has failed to allege facts that could plausibly satisfy the third factor, defeating its Lanham Act claim. As an initial matter, HLF claims no "consumer confusion or harm to plaintiff's goodwill in the United States," *Gucci*, 790 F. Supp. 2d at 143, the most straightforward way of establishing a substantial effect on United States commerce. This is for good reason: HLF does not exist in the United States (Am. Compl. ¶ 28), its customer base consists of "middle-class and working-class Singaporeans" (*id.* ¶ 30), and it has "no expertise in foreign markets" (*id.* ¶ 29). Instead, HLF's argument for why the third *Vanity Fair* factor is met here consists entirely of the following conclusory statement in its memorandum of law: "Morgan Stanley's scheme was executed in large part from New York." (Pl.'s Mem. 16). The sole support for their argument is a citation to *Calvin Klein Industries v. BFK Hong Kong Ltd.*, 714 F. Supp. 78, 80 (S.D.N.Y. 1989), which held that "a substantial effect on commerce may be found

7

where the defendant's activities are supported by or related to conduct in United States commerce."

It is not at all clear, however, that *Calvin Klein Industries* remains good law. In *Atlantic Richfield*, the Second Circuit did observe that *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1956) — which had applied the Lanham Act to the manufacture and sale of fake "Bulova" watches in Mexico — could be read "to indicate that a defendant's infringing extraterritorial conduct has a substantial effect on United States commerce whenever some non-infringing domestic activity is 'essential' to that extraterritorial conduct." 150 F.3d at 193. In the same opinion, however, the Court of Appeals stated that "*Bulova* does not hold that a defendant's domestic activity, even if 'essential' to infringing activity abroad, is alone sufficient to cause a substantial effect on United States commerce." *Id.*; *see also Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 830-31 (2d Cir. 1994) (holding that packaging in, and shipment of goods from, the United States were insufficient bases for application of the Lanham Act). Citing this language, several courts in this Circuit have held that "mere preparation . . . within United States borders does not satisfy the substantial effect prong of the *Vanity Fair* test when [the infringing activity] has [occurred] exclusively abroad. Domestic activity involved in the preparation of defendants' [activity], *even if 'essential' to the allegedly infringing activity abroad*, is not enough to satisfy this prong of the *Vanity Fair* test." *Procter & Gamble Co.*, 1998 WL 788802, at *68 & n.31 (emphasis added); *accord Gucci America*, 790 F. Supp. 2d at 144. *But see Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 171 (S.D.N.Y. 1998) (reading *Atlantic Richfield* to leave open whether essential domestic conduct could satisfy the third factor).

But even if *Calvin Klein Industries* were good law, HLF has failed to allege domestic activity by Morgan Stanley sufficiently essential to the allegedly infringing activity abroad. At

most, HLF alleges that Morgan Stanley issued and structured the Pinnacle Notes from its headquarters in and around New York City. (Am. Compl. ¶¶ 55, 86, 116). But the gravamen of HLF's Lanham Act claim is false advertising; that is, it "rises and falls on whether Morgan Stanley made statements that were 'likely to deceive' or 'likely to confuse' *investors* . . .," not on any statements Morgan Stanley made to HLF. (Pl.'s Mem. 8 (emphasis added)). And HLF makes no allegation that Morgan Stanley directed any false advertisements from the United States to the Singaporean investors. In fact, HLF does not allege that Morgan Stanley made any contact with the investors — as opposed to HLF employees (Am. Compl. ¶¶ 121-23, 127) — let alone mailed promotional materials to the investors from the United States. *Cf. Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169 (S.D.N.Y. 1995) (applying the Lanham Act where the plaintiffs alleged that the defendants had sent misleading promotional materials through the United States mail from New York to foreign consumers). There is, in short, no "nexus between [the defendant's] activities in the United States . . . and the allegedly infringing activities abroad." *Space Imaging Europe, Ltd. v. Space Imaging L.P.*, No. 98 Civ. 2291 (DC), 1999 WL 511759, at *5 (S.D.N.Y. July 19, 1999); *see also Gucci America*, 790 F. Supp. 2d 136, 147 (finding no substantial effect on United States commerce where the defendant did not actively solicit foreign purchasers of its products); *cf. Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 506 (S.D.N.Y. 2013) (noting that when "a plaintiff has sought to extend the Lanham Act to the foreign activities of foreign defendants, courts have scrutinized with care the nexus between the foreign defendant's activities within the United States and the conduct giving rise to the Lanham Act claims" (internal quotation marks omitted)). Thus, the Lanham Act does not extend to Morgan Stanley's alleged conduct, and the motion to dismiss the Lanham Act claim is granted.

## THE STATE LAW CLAIMS

Having dismissed the sole federal claim in the Amended Complaint, the next question is whether the Court should exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that a court may "decline to exercise supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction"). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks and citation omitted). The Supreme Court has noted that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, the parties are far from trial, and discovery has been stayed since May 2013. (Docket No. 63). Retaining jurisdiction over the state law claims would thus create a "'needless decision[] of state law,'" which is to "'be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Kolari*, 455 F.3d at 122 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Accordingly, Plaintiff's state law claims are dismissed as well.

## CONCLUSION

For the foregoing reasons, Morgan Stanley's motion to dismiss the Amended Complaint is GRANTED. The Clerk of Court is directed to terminate Docket No. 55 and to close the case.

SO ORDERED.

Dated: October 23, 2013
      New York, New York

JESSE M. FURMAN
United States District Judge

10